United States Cadet, tenets relating to authority and fulfilment, Islam for the affiliants, sovereign immunity issues, neutrality for the affiliants, jurisdiction and standing, Mr. Parker for the employees. Good morning, Council. It's good to see you. Good morning, Your Honor. And I'm Carolyn Lam. On behalf of the appellants, we have divided the argument and Ms. Kalinrocki will address the appealability and without prejudice denomination and standing. I'm going to the central issue in our view. First, there is no subject matter jurisdiction against the foreign state, here Russia, decided in this case under 1605A3. We appear for the appellants, not the Russian Federation. They are not in this part of the proceeding. But it's our appellants' assets that Chabad seeks to take to pay for over $200 million in fines that the district court has imposed against the Russian Federation as a result of their alleged defiance of an extraterritorial injunction to return some allegedly expropriated materials that are in Moscow. There's no question on these basic facts. The materials are not here in the United States. There's no allegation vis-a-vis the foreign sovereign that in fact there's any commercial use of those materials. Suppose I agree with you that after our court's decision in this chapel that your view about the amenability of the Russian sovereign is set forth for going forward. So the question here is what do we do about the fact that there was a lot of stuff that happened in this case before all that, including the original decision from our panel way back in 2000? The abiding one. Yeah, abiding one. Shall we call it abiding one? So the question is was there a finality attached to the jurisdictional presumptions that were in place at that time that would preclude the ability to revisit that now, even if we thought your understanding of the chapel is right as a matter of understanding? No. A court always, and under one of your more recent decisions, in fact, you referenced this, the way, why Oak Tech versus Iraq, a court always has to re-examine its subject matter jurisdiction. And under the Sudan case, in fact, even if jurisdiction was previously raised, if a particular issue of jurisdiction was not, you can still consider that. So we don't agree that in terms of raising this issue now when our assets are about to suppose jurisdiction is found in a case involving a foreign sovereign, that there's a judgment that's entered, time for appealing that judgment, that it's expired, that judgment has become final, and that sovereign after the judgment has become final, collaterally attack it, so to speak, and say, well, really, that one's wrong. Law has changed. There's no subject matter jurisdiction on this after all. Would that be prudent? The post-judgment challenge can be appropriate under certain circumstances. We don't say here the law has changed. We say it was never decided as to the foreign sovereign. Yes, you decided it, and we don't raise anything with respect to the library and military archive. The other two Russian defendants. We raise that you never decided, nor did the district court decide, the subject matter jurisdiction. And therefore, under Supreme Court precedent that we cite, as well as under your own circuit precedent, a judgment is void if it does not have subject matter jurisdiction. And this court, if you read his order that we are appealing from and his memorandum opinion that is incorporated in it, says I'm not deciding anything else unless I have a direction from the circuit. And by the way, I would need an en banc direction. But all of your cases, in fact, on the same issue, whether DeSheffield, Simon, Phillips, they have gone for en banc, been denied. Some have even petitioned for cert, been denied. No one disputes what the black letter language means. So I think that all goes to what the state of the law is now. I think still on this question that we've been asking you about, that gets to what do we do with the ground that's been plowed already in this case. Suppose we have a circumstance in which, in the first instance, the sworn sovereign comes into the case, makes an appearance, files pleadings, and objects to jurisdiction. And there's a hearing on jurisdiction. And it goes really bad for the sworn sovereign. The sworn sovereign beats the writing on the wall and says, maybe even just says, you know, I see where this is going. We're going to withdraw. And so there's withdrawals from the case. And then the case proceeds to judgment. There's a decision made that the jurisdiction is to that sworn sovereign. And the judgment's going to be withdrawn. And then they come in later and file a collateral attack and say, actually, you know, I'd like to actually challenge the jurisdiction. Can you do that? It depends when. If there's been a default judgment entered so that it's then post-judgment, I think at the time that post-judgment someone is trying to enforce a judgment that is devoid of jurisdiction and its issuance. It must be raised. It's a void judgment. What happened was the first time around, the sworn sovereign came in and saw the writing on the wall and said, boy, I see where this is going. But you know what? I got another chance. If I get out now, I can come back later after the default judgment's entered. And I might get a second crack at it. And I'm going to see if the law is better or I get a different form or something. I'm going to know. Well, let me tell you what really happened in this case from the record, because I don't think it is as bad as the case you caused. I'm not saying that it is. But I'm just wondering where your argument goes, because I guess that's the question. There is a principle of jurisdictional finality that kicks in in some circumstances. The question is, does that apply here? If you don't even think it applies in certain circumstances that I outlined, well, then that's one argument. But if you do think it would apply in that circumstance, but it doesn't apply here, then there's got to be some basis for us to say, notwithstanding my new practical concept that outlines the kind of choice that everyone's not made, why couldn't it be through this circumstance to be having made one in which the choice wasn't made, just like it was in the hypothetical that I referenced? I think we have to refer to the case that we've got before the court. And I think the facts here are compelling, because, yes, there was participation by the Russian Federation at the outset. And then there was a denial of the motion to dismiss. They filed an answer. They sent a diplomatic note. And in the diplomatic note, they said, you know what? The property is in Russia. It's not in the United States. And they then, in filing a notice to withdraw, said, by the way, you can't get the property that's in Russia. We raise all the FSIA issues. The judge then, several years later, enters the default judgment. He does not consider the FSIA issue raised in the answer. He does not consider it as to the sovereign. He does not consider, in fact, what had been decided in Havad 1. And if you look carefully at the decision in Havad 1, the court only decided as to the library and as to the archive. But the court did refuse to dismiss Russia or any other agency. It did, but without any reasoning. It didn't consider the issues. And in fact, if you look at the words of the end of Havad 1, the full sentence reads, we reverse the district court's finding of Russians' immunity as to the library claims based on the events of. So all that is right. I mean, it's completely consistent with what our court said in the trial. That's right. So all of this is right. But I don't see how that gets to squarely to whether. I'm not saying I'm just I'm not saying I'm necessarily against this. I'm not saying that's for you, but it doesn't get to whether what had already happened in your case in jail, even rather than appearance, to an extent that precludes collateral effect on that claim. And in our view, Your Honor, it does not. Because we say by failing. This is black letter law in the FSA. You must have the property in the United States by ignoring the black letter law. This wasn't some extraneous argument about subject matter jurisdiction. No one decided that was all that could be true. Suppose you have a district court that just. And I'm not saying this district court did it. I'm just elaborating hypothetical. You could have one of the district court just ignore the black letter law. But then what happens is the Foreign Servant comes in and says, I see where this is going. I made an appearance. I'm out of here. I'm going to try to get a second crack and have a better shot. That seems like a tricky proposition to stop, even in that circumstance. Well, even in that circumstance, I would say that under practical concepts, under Sudan, you can look post judgment, of course. And even in that circumstance, this circuit has the obligation to examine its own jurisdiction and that of the district court. And there is no existing circuit decision on that. Other than the shuffle that goes on for two pages saying the issue was never decided. My colleagues. But I'll just take that just a little further. If you're looking at the shuffle and criticize another panel, it's not overruling the panel. There's no Irish footnote. There's no change in law by the Supreme Court. We have a gun on file. So how do we deal with our own jurisprudence on that issue? Well, I think the shuffles analysis had it right, because what the shuffle court said is there isn't any interest in really any interest circuit or other split of any kind. And the district court judge recognizes this as well, because the issue wasn't decided. It wasn't briefed. It wasn't argued as to the foreign sovereign. And I read you the only sentence in there just conflates all of the defendants. So there's a non-decision. And I think the circuit law on that is, is good in the shuffle. The steel code, the citizens for a better environment. They say, you know, a drive-by jurisdictional determination really is not a jurisdictional determination. They look at it. Yes, that's the order. The default judgment order that was issued by the district judge at the outset in 2006 is an order of reply to bring the documents to the U.S. Embassy in Moscow. He knew where those documents were. All right. Thank you. We'll give you a little bit of time for rebuttals and comments and questions. We'll hear from you now on the standing in the television. Good morning, Your Honors. The court has impellent jurisdiction because impellents could appeal the denial of a motion without prejudice to obtain denial with prejudice. This is clear from the El Paso case in this circuit and others. Abbott has never contested this reasoning and nor could it. Here, the denial with prejudice is what was required given the uncurable jurisdictional defect, as Your Honor just referred to, that the property is in the Russian Federation. There's no allegation that it wouldn't be. If the property somehow came to the United States, this would be a completely different case. Because of that, no one disputes that the property is in Russia, and no allegation of additional facts would change the 1605A3 analysis. For that, this insult to prejudice is required. And Abbott is wrong that we are appealing the opinion and not the order. Of course, a portion of the order says it's a denial without prejudice. We are appealing that. Moreover, the immunity issues that are raised in the impellents briefs are necessarily included in the district court's order on notice under 1610C. The TIG case, the court had to assess its jurisdiction and immunity issues before getting to a post-judgment issue about limits. I just wanted to make reference to the finality. So clarifying, you're looking at this under plaintiff's inclusion, issue of inclusion, or lawful case, just so that whatever opinion we would write, we would discuss. We believe that in respect to the finality of the subject matter jurisdiction issue, the Bell helicopter case controls here that because there was a default judgment, the issue of subject matter jurisdiction has to be addressed. As Ms. Lamb explained, it was not final. There was no decision on Russia's immunity itself. This is very much like the Suzanne B. Owens case. And to Your Honor's question about where does it end, we don't need to address that here because a motion to dismiss was made raising some jurisdictional issues. It is very common for a sovereign to raise some issues in the motion to dismiss and then come back later and have additional jurisdictional issues considered, whether that's a first a factual challenge to the complaint and then later factual challenge. We don't have that here. The only ruling on Russia's subject matter jurisdiction issue, Russia's immunity, was in the default judgment context. And because of that, the practical concepts framework applies. There is no law of the case on this issue. Your Honor, for one second. So why do we have a collateral review authority over attachment immunity as opposed to jurisdictional immunity, given that one of the practicals of the review is that the issue is inclusively solved? The issue of, so within our brief, the two issues of attachment immunity, both are conclusively decided. All of the collateral order factors do apply. And the Seventh Circuit's decision in Rubin and the Fifth Circuit's decision in FG Hemisphere v. Convo are both constructed on this point. Attachment immunity issues also can satisfy the collateral order doctrine. The main factor is conclusively decided because Judge Leibniz was clear that he has no intent to revisit these issues that we have raised. He says that the only thing left to decide when Habbad removes to attach is the issue of bail piercing. So those two issues are conclusively decided. Further, they are completely separate from the merits of the bail piercing question or whether there is commercial property identified in the United States. And third, they are effectively unreviewable because the whole point of immunity, again, from the property, the property shouldn't have to be attached in order for these issues to be considered. So the point of the immunity applies equally here. That is what the Seventh Circuit said in Rubin about attachment immunity issues. Good morning, Your Honor. May it please the Court, my name is Robert Parker. For Elliott, Habbad, Whitney at counsel table, Steve Lieberman. If it pleases the Court, I'd like to take the issues in the same order that Ozen counsel took them. But I would like to start with a preliminary point that seems to have gotten lost, and that is Habbad 2. Where in Habbad 2, this Court ruled that these parties at Appellant's table, that is 10X, the same party that's currently represented at Appellant's table, doesn't have standing to challenge jurisdiction. They brought us Rule 60B, challenge jurisdiction. This Court addressed that in Habbad 2, said they did not have standing. We raised that point in our brief. In their reply, 10X said, well, we didn't bring the case under Rule 60. We didn't bring this motion under Rule 60B. Well, then what basis do they have to challenge jurisdiction in the first place? What vehicle did they use to challenge jurisdiction if not Rule 60B? If Russia were here today, Russia itself would have to use Rule 60B to challenge jurisdiction. So if they're not challenging, again, under Rule 60B, they have no standing. That's this Court's decision in Habbad 2. And by their own admission, they have no basis for actually bringing that issue before the Court. But let's assume, Governor. Your Honor, in Habbad 2, they filed a motion to quash. Judge Lambert denied that motion. Rather than file an appeal, direct appeal from that motion, they filed a motion challenging jurisdiction under Rule 60B. Judge Lambert denied that motion again. It came up before this Court in Habbad 2. And in Habbad 2, the Court said, no, you do not have standing to challenge jurisdiction. They're not appealing from the motion to quash. That's long, the denial of the motion to quash, that's long past. They're not appealing from the denial of their Rule 60B motion. The Court already held that they don't have standing to challenge jurisdiction under Rule 60B motion. So my question is, what is their basis for challenging jurisdiction in this case? We don't know. They haven't said. But, I mean, they have to. What's their subject to attack, right? They are subject to attack. So how are they supposed to object to attack? Their objection to attachment is that, in fact, what you heard Ms. Lambert say earlier on, their objection to attachment is, we are not the alter ego of the Russian Federation. OK, that's their objection to attachment. In order to attach their property, we have to show some connection between Tenex and the Russian Federation. That's the issue that the district court in this case reserved and did not decide. Tenex said, we're not the Russian Federation. We have nothing to, I mean, I'm being a little flimsy here, but we have nothing to do with the Russian Federation. We're not them. OK, that's fine. They can challenge attachment on that issue. We disagree. But that's their position. They're not even taking the position that they're standing in Russia's shoes to challenge jurisdiction. They're saying, you didn't have jurisdiction to address the immunity of that guy over there, Russia. Therefore, you shouldn't be coming after us. But that issue has already been decided, and they don't have standing to challenge it. Put aside jurisdictionality for a second, just for argument's sake. If there were no jurisdiction over Russia, Japan, that argument could be raised now. Tenex would benefit from that, right? I disagree with the premise, but yeah. But no, let me, I disagree with the premise in this respect. Let's go back to the basics. The basics are Judge Ginsburg's decision in practical context. And she set out a menu of options that a sovereign has when it is sued under the Foreign Sovereign Immunity Act. She said option one is you can appear, you can challenge jurisdiction. If you lose, you can take a direct appeal. That's it. You're done. OK? Or the sovereign can say, I don't want to play this game. I'm going to sit out. And if these people can make out a claim and get a default judgment, then when they try to enforce it, I can jump in and challenge jurisdiction there. OK? Those are the two menu items. Those are just the two items on the menu. Russia clearly chose option one on the menu. They appeared, they challenged jurisdiction, they lost, and they disappeared. OK? They did not take option two. OK? They did not. They did not default and not challenge jurisdiction and wait for post-judgment enforcement. So that's where the race judicata issue comes from. OK? They had to follow one of those two options. If I may. So I don't disagree with you that the way the practical concepts formula is laid out in that opinion itself, it gives you some support of your submission under a certain finale. What about Owens? So the Sudan case comes along later, and it actually cites practical concepts. Correct. And in Sudan, the facts are pretty parallel. Correct. You have a collateral challenge by a foreign sovereign, and it wasn't that the foreign sovereign was out the entire time in the first iteration. If you look at Owens, what Sudan did was they took both options in parallel. So if you look at the very beginning of the opinion, what happened in Owens was Sudan, there was a lot of back and forth because they didn't pay their attorneys, but essentially, to put it shortly, Sudan defaulted. When there was a default judgment entered against them, they jumped back into the case, and they filed a direct appeal. OK? Effectively, that's option one of practical concepts. OK? You can challenge jurisdiction in the main case on direct appeal, I guess either as a belts and suspenders kind of approach or to cover their bases. They also filed a motion with the district court to vacate the default judgment. Right. OK? That's option two under parallel context. Right? Right. OK. But there was no race judicata issue. Yes, they were allowed to do that. But there was no race judicata issue there because there had been no final appealed decision, OK, as there was here, establishing conclusively that the district court had jurisdiction. OK. If a party can exercise both options under practical concept, that would be Owens. Then it's not an either or. It isn't either or in the sense that if you, with practical context, the first option is if you challenge jurisdiction, take a direct appeal, and lose, you're done. Owens took the direct appeal approach and the collateral approach at the same time. Russia just took option one. Russia just took option one, said, I'm challenging jurisdiction. I'm asserting, and this is very important. Your Honor, we may disagree on disappeal, but I think there's no disagreement that this court, the district court, and this court ruled that there was jurisdiction under FSIA with respect to these claims that Chabad had brought against these defendants. There may not have been discussion about Russia versus one of the other defendants, but certainly the courts decided that the district court had jurisdiction over Chabad's claims. That went to final judgment. The district court, this court affirmed. That's practical concepts option one. And Russia? So one aspect of practical concepts, at least something that gives it attitude, of course, is that you shouldn't have the same party coming back and having a separate bracket. And one of the distinctions here is that it's actually, it's not the same party. Because it was Russia, and now we have France. And that's why they have the standing problem as well, because it's not Russia. But if you take that one, if you take that over to the practical concepts issue, then there is something a little bit off or anomalous about applying practical concepts and the other cases on which it rested, Supreme Court case that sided, all of which involved the same party. And here we have somebody else. It is anomalous, but it's not anomalous in the sense that there's sort of some concern that 10X won't get its day in court. 10X, when we go back to the district court, we will have to say to the district court that 10X's property is subject to attachment because 10X is the alter ego of the Russian Federation. If we win on that point, that is, if 10X is in fact the alter ego of the Russian Federation, then why should they get a second bite of the apple? Because they're the alter ego of the party that limited in the first case. If the district court says they're not the alter ego of the Russian Federation, then the district court will say, then their property is not subject to attachment. So it's not like they're caught in a bind. It's rather they want to have it both ways. They want to be treated as the Russian Federation for purposes of standing and res judicata, but they don't want to be treated as the Russian Federation for purposes of attachment. Because that's the issue we're going to have to decide when we go back to the district. You can think on the merits of the jurisdictional issue. If a case comes up tomorrow and it's filed in the first instance and it involved these same kinds of facts where it's undisputed that under the way that the general court looked at it, the foreign sovereign, there's no jurisdiction over the foreign sovereign, in that the first prong of the commercial nexus part is not met. You have to go to the second prong of the commercial nexus prong in order to get jurisdiction over the foreign sovereign itself. Do you think it's actually an open issue in our court in how that case would come out, or do you think that's now decided because of the judge? Your Honor, respectfully, I think that Judge Lamberth is correct. I think there are two strains of thought on this court with respect to how to interpret 1605-83, the expropriation exception, that if you get to that issue, then it should be decided either by the court en banc or maybe even at some point by a higher authority. So what should a subsequent panel do? What do you mean? If a panel gets that issue tomorrow, the panel can't say – the panel's got to decide a case before it. What would the panel do? I think – my advice to the panel would be to go back to the language of the statute and start from the beginning and apply the language of the statute. I agree with you, Your Honor, that De Chappelle said that having looked at De Chappelle and Simon, in that, you know, Simon should prevail even though De Chappelle was first. But I do agree also, as I said with Judge Lamberth, that there are parallel and conflicting strains in this circuit's jurisprudence on this issue. May I take two minutes to talk about the attachment issue? You can take two minutes. You can do it briefly. Okay. Unless my colleagues have questions on the rest of it. Okay. Unless the court has questions, I'm not going to address the appellate jurisdiction issue. That's fine. Okay. So forgive me. I appreciate the accommodation, Your Honor. Just with respect to the attachment issue, the MSIA, at least to this extent, is very good. The expropriation section is section 1605A3. It does not have a territorial restriction with respect to where the expropriated property is. That doesn't even make sense. If Russia expropriated a mine or a factory or a building, of course it wouldn't be in the United States. The expropriation takes place overseas. Okay. Once the court finds that the expropriation exception applies, that there's been an unlawful expropriation, there's no territorial limit in that provision with respect to where the property is. We then go and we look at 1606, which says, once you've found the violation, the defendant is subject or the district court has the authority to issue the same remedies as it would as if the defendant were a private party, with the exception of punitive damages, which is not an issue. So the court, I mean, plainly the district court has authority to order the return of unlawfully stolen property. It's a replevant action. I think that our opponents ignore section 1606. The territorial restriction comes in after you have a judgment, when there's a proposed judgment activity. It says you can attach property in satisfaction of your judgment, but that property has to be in the U.S. And we've identified Russian property in the U.S. Our position is that 10X's uranium is Russian property imported into the United States for commercial purposes. So therefore, there's no territorial restriction in the statute on the district court's authority to order the return of the unlawfully seized. There are other nuances to their argument, but given the time, I'll leave it there. The court has no further questions on any of these issues. Thank you, Your Honor. Thank you, Your Honor. Stan, you can ask for a minute and then I'll give you your minute. A quick minute. You need FSIA jurisdiction for both jurisdiction under 1605A3 and for the attachment. And when this court is interpreting the scope of both, obviously, you must look at the language of the statute. And under the restatement Fourth and Foreign Relations 404, it's clear you don't make extraterritorial interpretations unless there's clear congressional intent. And this is the opposite case. There's clear statement that, in fact, it's property in the United States. The other point we heard certainly a lot about the finality. You can't have finality if a court doesn't decide an issue. That's what happened here. The door was open. Thank you, Your Honor. Ms. Heine will give you the minute that you asked for. Thank you, Your Honor. Just two points. To clarify one aspect on the procedural history of the Owens case, there was no more finality as to the immunity of Russian Federation than there was as to Sudan. Sudan had moved to dismiss and also appealed that decision before in default. And that decision was also appealed before in default. That's the same situation here. Although the decisions on immunity in our case didn't even deal with the Russian Federation. They actually dealt with agencies and instrumentality. So, as Ms. Lamb said, there's even less of a determination in this case as to the immunity of the Russian Federation compared to the discussion in Owens pre-default of the immunity of Sudan. And then second, on the standing issue, I think that Your Honor had touched on this, that because Tenex USA's assets are directly under attack, the motion to attach, which has been refiled in the district court. So, again, Tenex USA and these assets are being pursued by Chabad. They don't deny this. And it's black-letter law, a party whose assets are being attacked, has jurisdiction, standing, I'm sorry, to challenge the underlying subject matter jurisdiction of the court to enter the order that is being enforced against it. That's the Harris v. Cuba case, Aurelius, and the Second Circuit Karakobotos. We have a number of them. Thank you so much. Thank you, counsel. Thank you, counsel, for taking this case under search.
judges: Srinivasan, Wilkins, Childs